United States District Court
Western District of New York

JAMES CASSANO, 99-A-1689,

Plaintiff,

-vs-

02-CV-6639

WILLIAM POWERS, Deputy
Superintendent, et. al.,

DECISION & ORDER

Defendants

## APPEARANCES

For Plaintiff:

James Cassano, *pro se*
Box 26
Fawnwood Lane
Fort Montgomery, N.Y. 10922
845-446-3799

For Defendants:

Emil J. Bove, Jr.
Assistant Attorney General of Counsel
Office of New York State Attorney General
144 Exchange Boulevard
Rochester, NY 14614
585-327-3222

## INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983, brought by the plaintiff, a former prison

inmate, proceeding *pro se*. Now before the Court is defendants' motion [#50] for summary

judgment, pursuant to FED. R. CIV. P. 56(b), on the grounds that plaintiff has not exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a). Alternatively, defendants seek summary judgment on the merits. For the reasons that follow the motion is granted.

## BACKGROUND

Plaintiff's claims are based on incidents that allegedly occurred while he was incarcerated at Orleans Correctional Facility ("Orleans").

Plaintiff alleges that on or before September 15, 2001, while he was housed at Orleans, his rights to free speech and access to the courts were impaired by a correction officer who took legal papers that plaintiff was attempting to mail to a relative. Plaintiff was attempting to resolve a legal matter, which required that he obtain certain documents from the Criminal Investigation Unit ("CIU") in the State of New Jersey. In order to do so, CIU required that he submit a properly certified fingerprint card. In late July, or early August of 2001, plaintiff contacted defendant Karen Brown ("Brown"), the Inmate Records Coordinator at Orleans, in an attempt to obtain his fingerprints. On August 10, 2001, Brown sent plaintiff a memo in which she informed him that the New York State Department of Correctional Services ("DOCS") does not provide fingerprints for such purposes, and that CIU could request them from the New York Division of Criminal Justice Services ("DCJS"). On August 13, 2001, plaintiff sent a Freedom of Information Law ("FOIL") Request to Brown, in which he again requested that the fingerprints be provided. Brown was not the correct person to receive a FOIL request. Rather it should have been sent to defendant William Powers ("Powers"), the Deputy Superintendent at Orleans, who in fact responded to the request on August 14, 2001. Powers informed plaintiff that DOCS does not provide fingerprints for inmates or other agencies, and that application must be made directly to DCJS.

Plaintiff claims that subsequent to the 'denial' of his FOIL request, he appealed to the DOCS Inspector General. Plaintiff's account of this 'appeal' is confusing, but he appears to be claiming that it resulted in Superintendent John Beaver providing, or being required to provide, the assistance necessary for submission of plaintiff's fingerprints to CIU. Plaintiff also claims to have contacted the FBI's FOIL Unit, from which he obtained a Freedom of Information Package, which contained, *inter alia*, a fingerprint card. Plaintiff apparently did write a letter to the FBI on July 26, 2001, and has submitted a letter received in response, dated July 31, 2001. The letter from the FBI informed plaintiff that he could have his fingerprints taken at the facility in which he was incarcerated. There is no evidence that plaintiff attempted to obtain a fingerprint card from DCJS.

As discussed earlier, Brown and Powers believed that it was against DOCS' policy to assist inmates in obtaining fingerprints. DOCS subsequently clarified that corrections staff could assist inmates in obtaining their fingerprints, provided that the inmates never actually possessed the fingerprint cards. Specifically, DOCS stated that if an inmate supplied the facility with a fingerprint card and a properly addressed envelope, facility personnel could fingerprint the inmate, place the card in the envelope, and mail the envelope, thereby preventing the inmate from ever actually possessing the completed card.

It is undisputed that plaintiff subsequently attempted to utilize this procedure to mail a completed fingerprint card to a family member. However, defendant Corrections Sergeant Makowski ("Makowski") observed that plaintiff's envelope, which was marked as "legal mail," was addressed to a family member, in violation of DOCS' legal mail policy, and opened the mail. Upon finding the completed fingerprint card, Makowski, believing it to be contraband, confiscated it. Makowski issued plaintiff a Misbehavior Report for possessing contraband, and for violating facility

correspondence rules by using legal mail to send items to a family member. At a Tier III disciplinary hearing, the hearing officer found plaintiff guilty of violating the rules concerning legal mail, but not guilty of possessing contraband. Plaintiff has offered no evidence showing that he appealed the Tier III hearing decision, though he did sign the decision form which described the appeal process. Plaintiff subsequently obtained the information that he was seeking from CIU in connection with his legal proceedings in New Jersey. Despite the delay occasioned by the foregoing events, there is no indication in the record that the delay affected plaintiff's legal proceeding in New Jersey.

On December 4, 2002, plaintiff filed a lawsuit in this Court, in which he claims he was denied access to the courts, in violation of his rights as protected by the 1st and 14th Amendments to the United States Constitution. Defendants now seek summary judgment, on the grounds that plaintiff never exhausted his administrative remedies, as required by 42 U.S.C. § 1997e(a). In support of this, defendants have submitted affidavits by Brian Fitts ("Fitts"), Inmate Grievance Program Supervisor at Orleans, and Thomas G. Eagan ("Eagan"), Director of the Inmate Grievance Program of DOCS. In his affidavit, Fitts states that he has

> [F]ound no record of any grievances filed by [plaintiff] regarding the alleged refusal of [defendants Powers, Brown, or Jelonek] interfering [sic] with his rights to access to Courts in connection with providing him with copies of his finger print cards or refusing to assist him to generate finger print cards to be submitted to a New Jersey state agency.

(Fitts Decl. ¶ 8.) He further states that he has found no evidence of any appeal to the Superintendent or to the Central Office Review Committee ("CORC"). (*Id.* at ¶ 9.) Eagen states in his affidavit that CORC has no record of a grievance appeal regarding the above-described matter. (Eagen Decl. ¶ 3.)

Additionally, defendants argue that plaintiff cannot prove two essential elements of his claim, namely, that the actions of the defendants were deliberate and malicious, and that his access to the

courts was actually impeded. The Court notes that, in their notice of motion, defendants gave the *pro se* plaintiff the notice as required by *Irby v. New York City Transit Auth.*, 262 F.3d 412, 413 (2d Cir.2001).

STANDARDS OF LAW

Summary Judgment

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied."11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest

upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). A court should read a *pro se* litigant's papers liberally, interpreting them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

Exhaustion of Administrative Remedies

42 U.S.C. § 1997e(a) reads: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

In *Porter v. Nussle*, the U.S. Supreme Court held that exhaustion is mandatory:

> The current exhaustion provision differs markedly from its predecessor. Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. And unlike the previous provision, which encompassed only § 1983 suits, exhaustion is now required for all actions . . . brought with respect to prison conditions, whether under § 1983 or any other Federal law.

*Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal citations and quotations omitted).

As the Court further noted; "Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and

improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time

and opportunity to address complaints internally before allowing the initiation of a federal case. *Id.*

at 524-25.

Access to the Courts

As previously discussed, plaintiff claims that defendants violated his right of access to the

courts. The elements of such a claim are well settled:

> Interference with legal mail implicates a prison inmate's rights to access to the courts
> and free speech as guaranteed by the First and Fourteenth Amendments to the U.S.
> Constitution. To . . . [substantiate] a claim for denial of access to the courts—in this
> case due to interference with legal mail—a plaintiff must . . . [prove] that the
> defendant took or was responsible for actions that hindered {a plaintiffs} efforts to
> pursue a legal claim.[P]laintiff must . . . [show] not only that the defendant's alleged
> conduct was deliberate and malicious, but also that the defendant's actions resulted
> in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal
> claim.

*Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (internal citations and quotations omitted).

In this regard, it is clear that not every interference with an inmate's legal mail amounts to

a constitutional violation:

> [T]wo instances of mail interference are insufficient to . . . [constitute] a denial of
> access to the courts because Davis has not . . . [shown] that the interference with his
> mail either constituted an ongoing practice of unjustified censorship or caused him
> to miss court deadlines or in any way prejudiced his legal actions. Mere "delay in
> being able to work on one's legal action or communicate with the courts does not rise
> to the level of a constitutional violation." *Jermosen v. Coughlin,* 877 F.Supp. 864,
> 871 (S.D.N.Y. 1995) (citing *Jones v. Smith,* 784 F.2d 149, 151- 52 (2d Cir. 1986)).
> Similarly, [plaintiff] fails to . . . [prove] a constitutional claim for violating his right
> to send and receive legal mail because he . . . [has shown] neither the establishment
> of an ongoing practice by prison officials of interfering with his mail nor any harm

suffered by him from the tampering.

*Id.* at 352.

## DISCUSSION

Generally, in order to properly meet the exhaustion of administrative remedies requirements

of 42 § 1997e(a), plaintiff must file a grievance with respect to the challenged behavior. Assuming

that the grievance is denied, he must then exhaust the grievance appeal process, by appealing to the

facility Superintendent, and then to the Central Office Review Committee ("CORC"). However, the

Second Circuit has identified circumstances in which an inmate's unsuccessful attempt to exhaust

may still meet the exhaustion requirements of § 1997e(a). *See Hemphill v. N.Y.*, 380 F.3d 680 (2d

Cir. 2004), *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), *Johnson v. Testman*, 380 F.3d 691 (2d Cir.

2004).

In *Giano*, the Second Circuit concluded that an inmate who does not exhaust his

administrative remedies using the Inmate Grievance Program may nonetheless be deemed to have

exhausted, where he reasonably believed that his only opportunity to challenge the complained-of

conduct was in a prison disciplinary proceeding. *See also, Johnson v. Testman*, 380 F.3d at 696-97

(Wherein the court examined whether or not "[plaintiff's] submissions in the disciplinary process

were sufficient, in a substantive sense, to exhaust his remedies under § 1997e(a)).

Here, plaintiff clearly did not follow the correct procedure for exhausting his administrative

remedies through the Inmate Grievance Program.[1] However, while he does not specifically claim that

---

[1]Plaintiff indicated a belief that pursuing his complaint through the Inmate Grievance Program would be futile because of the Tier III hearing associated with the incident. (Pl.'s Resp. Disc. Req. ¶ E [#31].)

he interpreted the DOCS regulations to require that he pursue his grievance, concerning the confiscation of his legal mail, via the disciplinary appeals process, his papers, if read liberally, could be construed to indicate that he had such a belief. (*See* Pl.'s Reply to Defs.' Notice of Mot. ¶ 7 [#59], Reply to Resp. to Mot. Summ. J. ¶ 4 [68].) Nonetheless, even assuming plaintiff believed that his proper recourse was to raise him complaint at his disciplinary hearing, rather than using the Inmate Grievance Program, he did not exhaust that process. That is, plaintiff has not provided any evidence that he appealed his Tier III hearing conviction. Since plaintiff did not pursue even the disciplinary appeal process, he can not have made "submissions in the disciplinary process [that] were sufficient, in a substantive sense, to exhaust his remedies under § 1997e(a)." *Johnson v. Testman,* 380 F.3d at 696-97. Since plaintiff did not exhaust his disciplinary appeal options, any claim that he thought this to be his only recourse is moot.

Plaintiff cites to *Rodriguez v. Westchester County Jail Correctional Dep't.*, wherein the court stated that, "[t]he issue is whether justifiable circumstances may sometimes excuse a prisoner's failure to exhaust administrative remedies when challenging conditions of confinement. We conclude that exhaustion may sometimes be excused and should be excused in this case." 372 F.3d 485, 486 (2d Cir. 2004). This case actually does not support plaintiff's position. In *Rodriguez*, the court found that after *Porter*, inmates are clearly required to exhaust administrative remedies. The only reason that the inmate in the *Rodriguez* case was 'exempt', was because he was transferred to another facility, which "rendered administrative remedies no longer "available," a condition of the exhaustion requirement of section 1997e(a). *Id.* at 488.

Plaintiff also claims that he exhausted his administrative remedies by appealing the denial of his FOIL request, by writing to the DOCS Inspector General, and by writing to the FBI. Assuming

that these actions could satisfy 42 U.S.C. § 1997e(a), which they do not, these activities only pertained to plaintiff's initial attempt to obtain a fingerprint card. They did not pertain to the subsequent seizure of his legal mail, which is the central claim in this case. To the extent that plaintiff may be claiming that the denial of his FOIL request amounts to a constitutional violation, the Court disagrees.

Defendants have come forward with evidence that plaintiff did not exhaust his administrative remedies. In order to survive summary judgment, plaintiff must introduce evidence to the contrary. At the very least, he must create a genuine issue of fact, thus necessitating a trial. Here, since plaintiff has not submitted evidence to show exhaustion of the administrative process, whether it be the proper one or one that he understood to be proper, even when applying the liberal standard mandated in *pro se* cases, there is no issue of fact. Defendants' motion must therefore be granted as a matter of law.

Finally, the court notes that even if plaintiff had shown exhaustion of his administrative remedies, his claim would fail nonetheless. Taking as true plaintiff's claim that the opening of his mail and the confiscation of his fingerprints was unjustified, these acts do not rise to the level of constitutional violation. Plaintiff must prove "not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff." *Lewis v. Casey*, 518 U.S. 343, 353 (1996). Plaintiff has not shown deliberate and malicious conduct. Moreover, as discussed earlier, he was subsequently able to obtain the document that he was seeking from CIU. He has not shown that the delay resulting from defendants' actions prejudiced him in any way, in connection with his legal proceeding in New Jersey. Likewise, he has not shown "the establishment of an ongoing practice by prison officials of interfering with his mail

nor any harm suffered by him from the tampering." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.

2003). Accordingly, defendants are entitled to summary judgment on the merits of plaintiff's claim.

CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [#50] is granted, and

this action is dismissed. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any

appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals

as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to

proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of

Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate

Procedure.

IT IS SO ORDERED.

Dated:   August____9____, 2005
         Rochester, New York

                                        ENTER:

                                        _____
                                        Charles J.  Siragusa
                                        United States District Judge